UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

LANSING COMMUNITY COLLEGE and
MIDDLE CITIES RISK MANAGEMENT
TRUST

        Plaintiffs,

v.                                                                          Case No. 1:09-CV-111

NATIONAL UNION FIRE INSURANCE                    HON. GORDON J. QUIST
COMPANY OF PITTSBURGH, PA.,

        Defendant.

_____/

## MEMORANDUM ORDER TO SHOW CAUSE
## REGARDING DIVERSITY JURISDICTION

Plaintiffs, Lansing Community College ("LCC") and Middle Cities Risk Management, filed

a Complaint for Declaratory Relief in Ingham County Circuit Court seeking, among other things,

a declaratory judgment that Defendant, National Union Fire Insurance Company of Pittsburgh, Pa.

("National Union"), is obligated to pay LCC and its employees' defense costs and indemnify them

against any judgment in the matter captioned *McCollum v. Bahl, et al.*, No. 1:08-CV-96, pending

before this Court.  National Union removed the case pursuant to 28 U.S.C. § 1441(a), alleging

diversity of citizenship under 28 U.S.C. § 1332 as the basis of the Court's jurisdiction.

Plaintiffs have moved for remand to state court, arguing that the Court should decline to

exercise its discretion to entertain this declaratory judgment action. In reviewing the motion, the

Court has determined that remand may be appropriate for a reason other than that cited by LCC.

That is, while the parties believe that diversity jurisdiction exists in this case, LCC's presence may

prove otherwise.  Because federal courts are courts of limited jurisdiction, "[t]he existence of subject

matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself."
*In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). Even if the parties do not dispute the existence of
subject matter jurisdiction, they cannot confer subject matter jurisdiction upon a federal court by
consent. *See Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 257 (6th Cir. 1994). Accordingly, a court
must ensure that subject matter jurisdiction exists before making any decisions on the merits. *See
Moir v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

It is well settled that a state is not a person for purposes of diversity jurisdiction. *Hughes-
Bechtol, Inc. v. West Va. Bd. of Regents*, 737 F.2d 540, 543 (6th Cir. 1984). *See also S. Carolina
Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008)
("It is well established that for purposes of diversity jurisdiction, a State is not a 'citizen.'"); *Melder
v. Allstate Corp.*, 404 F.3d 328, 335 (5th Cir. 2005) ("The law is settled that '[i]n an action where
a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because
a state is not a citizen for purposes of diversity jurisdiction.'") (quoting *Texas Dep't of Hous. &
Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995)). This rule also applies to
any entity that is an "arm or alter ego of the state." *State Highway Comm'n v. Utah Constr. Co.*, 278
U.S. 194, 199, 49 S. Ct. 104, 106 (1929). On the other hand, it is also well settled that
municipalities, counties, and other political subdivisions that are not simply an arm or alter ego of
a state are considered citizens and are thus subject to the diversity jurisdiction of federal courts.
*Moor v. County of Alameda*, 411 U.S. 693, 717-18, 93 C. St. 1785, 1800 (1973). Whether an entity
is an arm or alter ego of the state for purposes of diversity jurisdiction is purely a question of federal
law. *Mich. Dep't of Transp. v. Allstate Painting & Contracting*, No. 2:08-CV-286, 2009 WL
891702, at *2 (W.D. Mich. Mar. 31, 2009) (quoting *Univ. of Tenn. v. U.S. Fidelity & Guarantee Co.*,
670 F. Supp. 1379, 1380 (E.D. Tenn. 1987)).

In determining whether a public entity is an arm or alter ego of the state and, thus, not a "citizen" under 28 U.S.C. § 1332, courts generally look to principles that have been developed for determining whether governmental entities are entitled to Eleventh Amendment immunity. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260-61 (4th Cir. 2005) (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999), and *Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1202 n.4, 1203 (1st Cir. 1993)); *Treasurer v. Fortsmann Little & Co.*, No. 3:02CV519(JBA), 2002 WL 31455245, at *2 (D. Conn. Oct. 15, 2002). The Sixth Circuit has applied four factors in determining whether an entity is an arm of the state in the context of the Eleventh Amendment: (1) the potential liability of the state for any judgment against the entity; (2) the language used by state statutes and courts to refer to the entity, and the degree of state control and veto power over the entity's actions; (3) whether the board of the entity is appointed by state or local officials; and (4) whether the entity's functions fall within the traditional purview of state or local government. *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51, 115 S. Ct. 394, 406 (1994)). In considering whether a medical college was an arm of the state of Ohio in *Hall v. Medical College of Ohio*, 742 F.2d 299 (6th Cir. 1984), the Sixth Circuit applied the factors identified by the Third Circuit in *Blake v. Kline*, 612 F.2d 718 (3d Cir. 1979):

> * * * [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

3

*Hall*, 742 F.2d at 302 (quoting *Blake*, 612 F.2d at 722 (quoting *Urbano v. Bd. of Managers of N.J. State Prison*, 415 F.2d 247, 250-51 (3d Cir. 1969)).

The *Hall* court observed that "[t]he great majority of cases addressing the question of Eleventh Amendment immunity for public colleges and universities have found such institutions to be arms of their respective state governments and thus immune from suit." *Id.* at 301. Yet, the court recognized that the particular circumstances of each case must be considered. *Id.* at 302. This is especially true in the community college setting. *See Mitchell v. L. A. Cmty. Coll. Dist.*, 861 F.2d 198, 201-02 (9th Cir. 1988) (holding that California community college district was an arm of the state because it received funds from the state's general fund pursuant to a state calculated formula and some fees charged by the district's colleges went to the state); *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.*, 421 F.3d 1190, 1194-95 (11th Cir. 2005) (holding that Florida community colleges are an arm of the state entitled to Eleventh Amendment immunity); *Davis v. Cent. Piedmont Cmty. Coll.*, No. 3:07-cv-424-RJC, 2008 WL 5120616, at *3 (W.D.N.C. Dec. 4, 2008) (holding that community colleges in the North Carolina Community College system are entitled to Eleventh Amendment immunity); *Stevenson v. Owens State Cmty. Coll.*, 562 F. Supp. 2d 965, 968-70 (N.D. Ohio 2008) (holding that state community colleges organized under Ohio Rev. Code Ch. 3358 are arms of the state); *Henderson v. Sw. Tenn. Cmty. Coll.*, 282 F. Supp. 2d 804, 807 (W.D. Tenn. 2003) (concluding Tennessee community colleges are Tennessee state agencies protected by Eleventh Amendment immunity); *but see Chapman v. Dallas County Cmty. Coll.*, No. 3:05-CV-1809-G, 2006 WL 3442057, at *2 and *2 n.2 (N.D. Tex. Nov. 29, 2006) (holding that Texas community colleges do not enjoy Eleventh Amendment immunity); *Bland v. Kansas City, Kansas Cmty. Coll.*, 271 F. Supp. 2d 1280, 1286-87 (D. Kan. 2003) (concluding that Kansas community colleges are considered municipalities or political subdivisions rather than an arm of the state and thus do not enjoy sovereign immunity).

Although the Sixth Circuit has not considered whether Michigan community colleges are citizens for purposes of diversity jurisdiction or are arms of the state entitled to Eleventh Amendment immunity, it has observed in an unreported decision that "which side of this line a community college falls on is often a close question which depends on the particular funding structure and measure of local autonomy of the community college in question." *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 438 n.5 (6th Cir. 2006). This Court's research discloses one decision from a federal court in Michigan addressing whether a Michigan community college is an arm of the state. In *United States ex. rel. Deop v. Wayne County Community College District*, 242 F. Supp. 2d 497 (E.D. Mich. 2003), the court held that the Wayne County Community College District is an arm of the state that enjoys Eleventh Amendment immunity. In reaching this conclusion, the court noted that Article 8, § 7 of the Michigan Constitution requires the legislature to provide by-laws for the establishment and financial support of public, community and junior colleges to be supervised by locally elected boards and that pursuant to that provision, the legislature has enacted the Community College Act of 1966, which provides a comprehensive statutory scheme regulating the formation, funding, and operation of community college districts. *See id.* at 527. In addition, the court found it significant that the state provided over one-third of the district's funding during two recent fiscal years. *See id.* The court concluded that the community college district was an arm of the state because it "was created by the State and is subject to the comprehensive State statutory scheme governing the operations of community colleges," and because of the level of funding from the state, "any damage award would, by necessity, invade the state treasury, at least in part." *Id.* at 527-28.

In light of the fact that the Court raised the issue of subject matter jurisdiction *sua sponte*, and the parties have not had an opportunity to address the issue, the Court will give the parties an opportunity to submit briefs addressing LCC's status as an arm of the State of Michigan and to

provide to the Court any evidence they deem relevant to the issue. The briefs should address the four factors set forth in *Ernst*, *supra*, as well as any additional relevant considerations identified in *Hall*, *supra* (following *Blake*). Therefore,

**IT IS HEREBY ORDERED** that within **thirty (30) days** of the entry of this Order, the parties shall file briefs addressing Plaintiff Lansing Community Colleges's status as an arm of the State of Michigan for purposes of diversity jurisdiction. The briefs shall be limited to fifteen pages. Each party may file a response, limited to five pages, within **fifteen (15) days** of the filing of the other party's brief.

**IT IS FURTHER ORDERED** that the oral argument set for October 22, 2009, at 3:00 PM is **adjourned without date** pending the Court's determination of subject matter jurisdiction.

Dated: October 14, 2009            <u>         /s/ Gordon J. Quist       </u>
                                                    GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE